# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 99-3063

————————

| | |
|---|---|
| Sandy A. Johnston, | * |
| | * |
| Appellant, | * |
| | * |
| v. | * Appeal from the United States |
| | * District Court for the |
| Kenneth S. Apfel, Commissioner, | * Western District of Missouri |
| Social Security Administration, | * |
| | * |
| Appellee. | * |

————————

Submitted:  March 3, 2000

Filed:  April 7, 2000

————————

Before McMILLIAN, BOWMAN and LOKEN, Circuit Judges.

————————

McMILLIAN, Circuit Judge.

Sandy A. Johnston appeals from a final order entered in the District Court[1] for the Western District of Missouri affirming the decision of the Social Security Administration denying her claim for supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. Johnston v. Apfel, No. 97-1083-CV-W-66BA-SSA (W.D. Mo. Mar. 11, 1999) (district court order). For

_____

[1]The Honorable William A. Knox, United States Magistrate Judge for the Western District of Missouri.

reversal, Johnston argues that the ALJ erred in (1) using the wrong standard at step two of the sequential analysis to evaluate the severity of her impairments and in finding that she did not suffer from a severe impairment or combination of impairments, (2) finding her thyroid-related eye disease did not meet Listing 9.02(A), and (3) discounting her credibility in evaluating the severity of her subjective complaints. For the reasons discussed below, we affirm the order of the district court.

The district court had jurisdiction to review the final decision of the Social Security Administration under 42 U.S.C. § 1383(c)(3) (judicial review of final decision of Social Security Administration under Title XVI). We have appellate jurisdiction under 28 U.S.C. § 1291.

Johnston applied for SSI benefits in July 1995, claiming that she became disabled in January 1995 due to complications from hyperthyroidism (Grave's disease) (she was diagnosed with hyperthyroidism in May 1995) and heart problems. Her application was denied initially and on reconsideration. She then requested a hearing before an administrative law judge (ALJ). After the hearing, the ALJ found that Johnston did not suffer from a severe impairment and denied her claim. The Appeals Council affirmed the decision of the ALJ. Johnston then sought judicial review in federal district court. The district court affirmed the decision of the ALJ. This appeal followed.

Johnston was born in 1959. (She was 37 years old at the time of the administrative hearing in 1996.) She has a 12th grade education and has completed vocational training in data entry. She has worked in the past as a telemarketer, file clerk, office clerk, student nurse's aide, housekeeper, and cashier. She is divorced and the mother of twins (they were 2 years old in 1996).

As noted above, Johnston filed an application for SSI benefits in July 1995, claiming that she became disabled in January 1995 due to complications from

hyperthyroidism and heart problems. She complained of the following symptoms and medication side effects-- headaches, blurred vision, double vision, chest pain, forgetfulness, mood swings, panic attacks, uncontrollable and unpredictable crying spells, body aches, swelling, weight gain, fatigue, and inability to concentrate. Johnston has been working since 1975; however, as noted by the ALJ, her employment record is sporadic. She has not worked at any one job for more than a few months at a time (her longest period of employment was for 7 months). Most of her jobs lasted only 1 to 4 months. The ALJ found that her work history reflected little or no motivation to work. Her husband supported her during their marriage; she never earned more than $3,500 in any year and apparently earned as little as $100 per year for most years.

Johnston underwent successful treatment (radio-iodine ablation therapy which deactivated the thyroid gland) for her hyperthyroidism and takes a synthetic thyroid hormone. It took several months to adjust the dosage, but her thyroid level is now normal. Johnston has eye problems caused by her hyperthyroidism, specifically, active thyroid-related orbitopathy, periorbital swelling, exophthalmos (protrusion of the eyeballs), fat herniation in the lids, and chronic exposure keratitis (due to the protrusion of her eyeballs, she cannot completely close her eyelids and her eyes dry out and become irritated). In February 1996 an ophthalmologist found that Johnston's eye condition had stabilized within the prior 4-6 months and recommended corrective eye surgery, but apparently Johnston was reluctant to undergo surgery and has not had the eye surgery.

Johnston also complained of nervousness and anxiety. She was initially diagnosed with probable panic disorder and anxiety disorder and was prescribed medications. According to the ALJ, the medications corrected her symptoms within days, and she reported improvement of energy, sleep, concentration, and anxiety, school was going well, and no panic attacks or crying spells.

-3-

In February 1996 Johnston underwent cardiac tests (x-ray, EKG, echocardiogram). The test results were normal or unremarkable. She does have occasional sinus brachycardia (slowness of the heart beat or pulse), but it was apparently not related to her hyperthyroidism.

At the administrative hearing, Johnston testified that, after treatment for her hyperthyroidism, she began to experience panic attacks and have problems concentrating. She testified that the panic attacks are unpredictable and occur several times a day despite her medication. She testified that she has a problem sitting still due to nervousness and that she has unpredictable crying spells several times a month. Her daily activities include a little cooking, very light housework and taking care of her daughter. Her sister helps her by cleaning her house, shopping, and taking her daughter to day care. (The father has been taking care of her son.) She listens to the radio because she cannot focus well enough to watch TV or read. Because she believes her anxiety and panic attacks are aggravated by crowds, Johnston spends much of her time at home. She rarely drives because of her vision problems. She handles her own money. She testified that her biggest problems were fatigue and her eyes.

At step 1 of the sequential analysis, the ALJ found that Johnston had not engaged in substantial gainful activity since January 1995 (the alleged onset date of her disability). Proceeding to step 2, the ALJ found that her hyperthyroidism and visual impairments could be expected to last a continuous period of 12 months, but that there was no evidence that these impairments imposed any significant limitations upon her ability to do basic work activities and were therefore not "severe." See decision of ALJ, slip op. at 5. In addition, the ALJ found that there was no evidence that her other impairments (sinus brachycardia, panic attacks, anxiety disorder) were expected to last for a continuous period of 12 months or currently imposed any significant limitations upon her ability to do basic work activities. See id. For these reasons, the ALJ concluded that plaintiff did not have a "severe" impairment and therefore was not "disabled" (for purposes of SSI benefits). Because the ALJ found no severe

impairment, the ALJ did not proceed to step 3 to consider whether Johnston's impairment or impairments met Listing 9.02(A) (for thyroid condition with progressive exophthalmos or protrusion of the eyeballs as measured by exophthalmometry). See 20 C.F.R. Part 404, subpart P, app. 1, § 9.02A.

Johnston requested review by the Appeals Council. The Appeals Council denied review. Johnston then sought judicial review in federal district court. The parties filed motions for summary judgment. The district court granted summary judgment in favor of the government. The district court found that substantial evidence on the record as a whole supported the finding of the ALJ that Johnston's physical and mental impairments did not have more than a minimal, if any, effect on her ability to work and therefore she did not have a severe impairment or combination of impairments. See district court order, slip op. at 7-9. The district court noted that it took Johnston's treating physician several months to adjust her hormone medication dosage and that her symptoms of racing heart beat, blurred vision, and inability to concentrate could be directly traced to her fluctuating hormone levels. See id. at 7. The district court also noted that, although Johnston suffered from thyroid-related orbitopathy, her doctor had prescribed eye drops for her dry eye condition. She did have a slight deficit in ocular motility and imperfect eye coordination that resulted in occasional double vision. However, the district court noted that her visual acuity remained good, she had no color vision abnormalities, and she had no optic nerve compromise or visual loss as a result of her thyroid problems, and that, after her hormone medication dosage had been adjusted, her eye disease had stabilized and she was a candidate for corrective eye surgery. See id.

The district court also found that Johnston did not meet Listing 9.02(A) for thyroid disorders with progressive exophthalmos as measured by exophthalmometry. See id. The district court noted that the medical evidence did not show that she suffered from progressive exophthalmos. See id. The medical evidence instead showed that her thyroid-related orbitopathy had stabilized with the adjustment of her

hormone medication. See id. at 8. The district court also found that Johnston's anxiety problems only mildly limited functioning and had been treated successfully with medication. See id.

The district court also found that substantial evidence on the record as a whole supported the finding of the ALJ that Johnston's subjective complaints were inconsistent with the medical record, her daily activities, and her work history. See id. The district court noted that, with one exception, Johnston did not complain about any medication side effects to her treating physicians. See id. The ALJ noted that no physician, treating or otherwise, expressed any opinion that Johnston was disabled; no treating physician placed any specific restrictions on her activities; and disability determination service physicians indicated that she had no exertional, postural, visual, communicative or environmental limitations within 12 months of the diagnosed onset of her thyroid disease. See decision of ALJ, slip op. at 4. The ALJ also noted that the symptoms related to her diagnosed panic disorder and anxiety disorder had improved with medication within days and there was no evidence that her mental impairments were expected to last for a continuous period of 12 months. See id. This appeal followed.

Johnston first argues that the ALJ used the wrong standard at step 2 of the sequential evaluation analysis to evaluate the severity of her impairments. As noted above, the ALJ found that Johnston's physical and mental impairments were not severe because there was no evidence that they imposed "any significant limitations" upon her ability to do basic work activities. Johnston argues that the correct standard at step 2 is not "any significant limitation" but instead the lesser standard of "no more than a minimal effect" on the ability to work. See, e.g., Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1996) (holding sequential evaluation analysis may only be terminated at step 2 when impairment or combination of impairments would have no more than a minimal effect on claimant's ability to work, citing Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir. 1991)). Although the ALJ's decision referred to the "no significant limitation"

standard instead of the "no more than a minimal effect" standard, any error was harmless because it is undisputed that the district court used the correct "more than a minimal effect" standard. See district court order, slip op. at 8-9 (holding substantial evidence on the record as a whole supports ALJ's decision that plaintiff's physical and mental conditions had no more than "minimal, if any, effect" on her ability to work); district court order denying post-judgment motions, slip op. at 1 (May 25, 1999) (noting that Johnston acknowledged that the district court used the correct standard in upholding the ALJ's decision).

Johnston next argues that the ALJ erred in finding that she did not suffer from a severe impairment or combination of impairments. We will uphold the decision of the ALJ (which was affirmed by the Appeals Council and is the final decision of the Commissioner of the Social Security Administration) if it is supported by substantial evidence on the record as a whole. See, e.g., Williams v. Sullivan, 960 F.2d 86, 89 (8th Cir. 1992) (defining substantial evidence as that which a reasonable mind might accept as adequate to support the Secretary's conclusion).

We hold that the ALJ's finding is supported by substantial evidence on the record as a whole. The medical record showed that Johnston underwent successful treatment for her thyroid disease and has had normal thyroid levels since taking synthetic thyroid hormone. Some of her symptoms (problems with heart rate, blurred vision and inability to concentrate) were directly related to her fluctuating hormone levels before her doctor adjusted her medication dosage. Johnston's eye problems were related to her thyroid disease and responded to treatment. The medical record showed that she has good visual acuity, no color vision abnormalities, no optic nerve compromise, and no visual loss as a result of her thyroid condition. The medical record also showed that Johnston's thyroid-related eye disease was not progressive and had stabilized by February 1996.

The medical record also showed that Johnston's heart problems were not severe. Her tests were normal, and the brachycardia (low heart rate) was probably due to anxiety. The medical record also showed that Johnston's panic and anxiety disorders were not severe and were probably due to anxiety about the recommended corrective eye surgery and that her symptoms had responded to medication. In May 1996 Johnston reported improvement in her symptoms (improved sleep, energy and concentration, felt better about self, school was going well). As noted below, the inconsistencies between Johnston's subjective complaints, the medical record and her daily activities supported the ALJ's finding that her impairments were not severe. Johnston was the primary caregiver for her young daughter (the father was taking care of the son); she did some housework, shopping, and cooking; she handled her own money; and she was attending school.

Johnston did not meet the requirements of Listing 9.02(A). Next, Johnston argues that her thyroid-related eye disease met the requirements in Listing 9.02(A) and therefore she has a severe impairment for purposes of the sequential evaluation analysis. (The ALJ stopped at step 2 and therefore did not consider whether she met the requirements of Listing 9.02(A).)

Listing 9.02(A) requires progressive exophthalmos (the abnormal protrusion of the eyeball), caused by thyroid disorder, as verified by exophthalmometry measurements. The medical record showed that Johnston's exophthalmos was not progressively worsening because, although her eye measurements increased between June and August 1995, the measurements decreased in September 1995 and did not change much between October 1995 and February 1996, at which time the ophthalmologist concluded that her eye disease had stabilized with no optic compromise or visual loss.

Johnston next argues that the ALJ improperly discounted her credibility in evaluating the severity of her subjective complaints. For example, she argues that the

ALJ improperly discounted her blurred and double vision and exophthalmos. She also argues that the medications prescribed for the vision problems and her panic and anxiety attacks caused dizziness, lightheadedness and agoraphobia. She also argues that her vision problems, heart problems, anxiety and panic attacks, and inability to concentrate significantly restricted her daily activities and that she required the assistance of family members to take care of her household and her children. She also argues that the ALJ erred in finding that her work history showed little or no motivation to work. She argues that her earnings were low because she depended upon her husband for financial support during the marriage.

We hold that the ALJ properly discounted Johnston's credibility in evaluating the severity of her subjective complaints. See Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subjective complaints of pain). The inconsistencies between her subjective complaints, the medical record and her daily activities supported the ALJ's finding that her impairments were not severe. The medical record showed that her thyroid disease had been successfully treated, her vision problems had responded to treatment and her thyroid-related eye disease had stabilized, her panic and anxiety disorders had responded to medication, and her heart problems were probably related to her anxiety disorder (her cardiac tests were normal or unremarkable). There was no evidence that she had reported the dizziness, lightheadedness or agoraphobia to her doctors (with one exception). Finally, the record showed that her daily activities included handling her own finances, some cooking, some housekeeping, taking care of her young daughter, some reading and watching television, and attending classes.

Accordingly, we affirm the order of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.