# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 00-1987

———————

Wendell O. Simmons, Sr.,       *
      *
           Appellant,       *    Appeal from the United States
      *    District Court for the Western
    v.       *    District of Missouri.
      *
Larry G. Massanari,[1] Commissioner       *
of Social Security Administration,       *
      *
           Appellee.       *

———————

Submitted: May 16, 2001

Filed: September 6, 2001

———————

Before McMILLIAN, and BEAM, Circuit Judges, and KYLE,[2] District Judge.

———————

BEAM, Circuit Judge.

Wendell O. Simmons, Sr., appeals the denial of social security disability insurance benefits. Simmons applied for benefits in December 1993, and alleges

———————

[1]Pursuant to Fed. R. App. P. 43(c)(2), Acting Commissioner Larry G. Massanari, appointed to serve effective March 29, 2001, is automatically substituted for former Commissioner Kenneth S. Apfel.

[2]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

disability since June 1952 stemming from paranoia, schizophrenia, and back problems. His date last insured (DLI) was March 31, 1958. Simmons' application was denied by the Commissioner initially and also upon reconsideration. Simmons then requested, and was granted a hearing in March 1995 before an administrative law judge (ALJ). The ALJ rendered a decision in which he found that Simmons was not under a "disability" as defined in the Social Security Act (Act) at any time during his insured status. On July 12, 1996, the Social Security Administration Appeals Council denied Simmons' request for review. The district court[3] affirmed the Commissioner's decision to deny benefits, and we affirm the district court.

## I.    BACKGROUND

Simmons was sixty-three years old at the time of the administrative hearing. He entered the military in 1950[4] and first had medical problems in May 1951 when he went "AWOL" (absent without leave) after hearing threatening voices. He was hospitalized and diagnosed with a "schizophrenic reaction, catatonic type." In June 1951, he was transferred to Brook Army Hospital. Upon discharge in August 1951, his mental status examination revealed that he was "moderately tense but otherwise manifested no gross indications of emotional disturbance," and he was rational, cooperative, coherent, and his judgment was intact. Notably, no residual signs of his then recent psychotic episode were present. His speech and manner of behavior were normal, he denied hallucinatory experiences, and he did not manifest bizarre tendencies. However, on August 20, 1951, another doctor diagnosed Simmons with severe schizoid personality,

---

[3]The Honorable Dean Whipple, Chief Judge, United States District Court for the Western District of Missouri.

[4]The record indicates that Simmons twice attempted to enlist in the military, in 1947 and 1948, prior to reaching the age of majority. He was discharged both times for his minority status and he reenlisted in 1950 upon reaching the age of eighteen.

recommended military discharge, and felt that Simmons could not be rehabilitated for useful duty.

Upon release from the hospital, Simmons was returned to Camp Roberts where he was placed in the stockade, awaiting trial for going AWOL. On September 6, 1951, a physician found Simmons mentally capable of understanding the disciplinary proceedings against him. Simmons was hospitalized later in September 1951 for suspected rheumatoid arthritis and, following a varicocelectomy,[5] he left the hospital and went AWOL again for ten days in October. An October 1951 unsigned psychological report states that Simmons had schizophrenia in partial remission with aggressive tendencies and borderline adjustment, that he exhibited psychotic signs, and that under stress, his adjustment could not be maintained. In contrast, another evaluator opined in that same month that Simmons' psychotic potential was difficult to evaluate, and that he probably could adjust to the Army.

Simmons next reported back pain in October 1951. However, a physician found no orthopedic reason for restricting duty, and X-rays showed some joint arthritis without a current or prior injury. During hospitalizations at the Army Hospital at Camp Cooke in November 1951, Simmons reported that he had not had hallucinatory experiences and that he wanted a career in the Army and to serve overseas. Shortly thereafter, he went AWOL again and throughout the rest of November and December he was either in the hospital, on convalescent leave, or AWOL.

In January 1952, Simmons returned from AWOL status and reported to Camp Cooke hospital. While there, he was given physical and mental examinations, which revealed a dull normal IQ of 84. He was also diagnosed with incipient schizophrenia. The examiner noted that Simmons did not appear psychotic, but that tests indicated

_____

[5]This is a procedure to remove a painful dilation of the venous complex in the spermatic cord.

psychosis was "not far removed." In February, a neuropsychiatrist opined that Simmons was a danger to himself and others and that recurrences of psychotic episodes were likely with stress.

Upon returning from another AWOL incident in April 1952, Simmons was again diagnosed by an army hospital doctor as having "schizophrenic reaction, latent, chronic, moderate, manifested by emotional disharmony, tendency to daydream and to retreat from reality, distortion of reality, episodes of emotional upsets and hallucinatory experiences. Stress unknown. Predisposition severe . . . . Impairment severe. Unimproved." Simmons next complained of back pain in June 1952, and shortly thereafter was evaluated for his fitness for duty by the Medical Review Board. This examination revealed that Simmons' spine was normal, but the Medical Review Board found that he had a mental disorder rendering him physically unfit for retention on active duty. Simmons was discharged from the Army in June 1952 and signed an application for discharge for physical disability not caused or worsened by military service.

In December 1952, Simmons enlisted in the Marine Corps. He stated in his medical report that he was in good health, and denied having previous medical problems. However, at the recruiting depot, Simmons reported that he had prior back problems since September 1951 and that he had been surveyed out of the Army for that reason. His physical entrance examination revealed no demonstrable back problems, and the physicians found that he met the minimum psychiatric standards for duty. Two weeks into his Marine Corps duty, Simmons refused to work because of headaches and shortly thereafter he was referred for psychiatric treatment because he complained of "nervousness." In February 1953, a psychiatrist found him unqualified for discharge based on a physical or mental disability, but did recommend discharge. In March 1953, Simmons was discharged for "unsuitability" based on the recommendation of a review board.

From 1953 through his last insured date in 1958, the record is devoid of Simmons' whereabouts, other than an indication that Simmons served time in prison for forgery in 1956 and 1957. The record also contains evidence of Simmons' post-DLI difficulties with his back and psychiatric disorders, but that evidence is not relevant to the essential question here of whether Simmons suffered a severe impairment from 1952 through 1958–the time he was insured for purposes of the Act.[6]

Based on this record, the ALJ found that Simmons was not entitled to benefits under the Act because he had not established he was under a disability at any time when he met its disability insured status requirement. Specifically, the ALJ found that while Simmons may currently suffer from back pain and psychiatric disorders, the nature and severity of those disorders had not been established before Simmons' DLI in 1958. The ALJ further found that Simmons' subjective complaints were not credible to the extent alleged, and that before his DLI, his impairments, alone or in combination, were not severe enough to significantly limit his ability to perform basic work activities for at least twelve months.

Simmons argues that the ALJ erred by finding that his impairment was not severe, and also challenges the ALJ's findings concerning his subjective allegations of pain.

---

[6]Simmons argues that he currently suffers from schizophrenia, and that fact, coupled with the evidence of the psychotic incident in 1951 demonstrates an ongoing psychiatric disorder. However, the medical evidence in the record from Simmons' military service shows at least some of his physicians believed he had fully recovered from the 1951 incident.

## II.  DISCUSSION

To be eligible for disability insurance benefits, a claimant has the burden of establishing the existence of a disability under the Act.  42 U.S.C. § 423(a)(1)(D).  To meet this burden, the claimant must show: (1) a medically determinable physical or mental impairment that has lasted, or can be expected to last, for not less than twelve months; (2) an inability to engage in any substantial gainful activity; and (3) that this inability results from the impairment.  42 U.S.C. § 423(d)(1)(A).

The Commissioner uses the familiar five-step sequential evaluation to determine disability:  (1) whether the claimant is presently engaged in a "substantial gainful activity;" (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities;  (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work;  and (5) if the claimant cannot perform the past work, the burden then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.  Cox v. Apfel, 160 F.3d 1203, 1206 (8th Cir. 1998).  Notwithstanding the five-step sequential process, the claimant must also show that he or she became disabled during the period in which he or she met the disability insured status requirements.  42 U.S.C. §§ 423(a), 416(i).

Our standard of review is  narrow and we will affirm the ALJ's findings if they are supported by substantial evidence on the record as a whole.  Cox, 160 F.3d at 1206. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."  Id. at 1206-07.

Like the district court, we formulate the essential question in this appeal as whether the ALJ erred in terminating the sequential evaluation process at step two by determining that, prior to March 31, 1958, Simmons did not have a severe impairment

or combination of impairments. The sequential evaluation process may be ended at step two when an impairment or combination of impairments would have no more than a minimal effect on the claimant's ability to work. Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1996). We find there is substantial evidence to support the ALJ's findings in this case. There is evidence in the record that Simmons functioned well enough to perform substantial gainful employment from the years 1952 through 1958.

We acknowledge that the record clearly contains conflicting evidence as to Simmons' mental status while on active military duty from 1950 through 1952. Clearly he had a psychotic episode in the spring of 1951, and he was eventually discharged due to a mental disorder rendering him physically unfit for retention in active military service. However, other evidence did show that Simmons' treating physicians in the military believed that the major psychotic episode was isolated and that he had recovered from that. Further, these physicians found no objective medical evidence of significant back problems. Simmons' inability to work in the specialized area of active-duty military service does not preclude his ability to perform other types of work. As the district court noted,

> [w]hen Simmons was discharged from service in the Army in June 1952, it was based in part on the recommendation from [a psychiatrist] that Simmons "cannot be considered to do full duty, in fact he may be considered a liability and a danger to both himself as well as others especially in a combat condition." [This] recommendation related only to full, active military service; he did not speculate that Simmons was limited in his ability to perform basic work-related activities.

Simmons v. Apfel, No. 96-5064, slip op. at 13 (W.D. Mo. Feb. 15, 2000) (citation omitted).

Moreover, after his discharge from the Army in 1952, Simmons was accepted into the Marine Corps following an examination in which doctors found no

demonstrable back problems and declared that he met the minimum psychiatric standards for duty. In light of this arguably conflicting evidence, a reasonable mind might accept the evidence that Simmons did not suffer from a severe impairment that would have more than a minimal effect on his ability to work. Under our standard, this means that we must affirm the ALJ's decision to terminate the five-step sequential evaluation at step two because Simmons did not suffer from a severe impairment. Johnston v. Apfel, 210 F.3d 870, 874 (8th Cir. 2000).

Finally, there is also substantial evidence in the record to support the ALJ's decision to discount Simmons' subjective complaints. The record indicates that Simmons has given several conflicting statements in the past, including lying about his age to enter the military service, and giving conflicting statements to the Marine Corps upon enrollment. And, he served time for forgery. In light of the foregoing, the ALJ's finding that Simmons' impairments were not severe based on his subjective complaints is supported by substantial evidence in the record. Id. at 875.

## III. CONCLUSION

Accordingly, we affirm the judgment of the district court.

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.