# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2139

_____

|  |  |  |
|---|---|---|
| Marilyn J. Page, | * | |
| Plaintiff – Appellant, | * | |
| v. | * | Appeal from the United States |
|  | * | District Court for the Eastern |
| Michael J. Astrue,[1] Commissioner, | * | District of Arkansas. |
| Social Security Administration, | * | |
| Defendant – Appellee. | * | |

_____

Submitted: February 16, 2007
Filed: April 26, 2007

_____

Before LOKEN, Chief Judge, GRUENDER, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

_____

[1]Michael J. Astrue has been appointed to serve as Commissioner of Social Security, and is substituted as the appellee pursuant to Federal Rule of Appellate Procedure 43(c)(2).

Marilyn J. Page appeals the district court's[2] affirmance of the Commissioner's denial of her application for disability insurance benefits and supplemental security income. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Page, born on November 24, 1958, has a general equivalency diploma with some vocational training in billing. She worked as a forklift operator, products packer, products assembly worker, factory "garment girl," and personal care aide for the mentally ill.

Page stopped working in January 1999, to care for her father. She became sick while assisting him, and has not worked since. In December 2000, she applied for disability insurance and supplemental security income benefits, alleging inability to work due to a blood clot in the lungs. She later alleged that pain from her neck caused weakness in her left side. After her applications were denied initially and on reconsideration, she requested a hearing.

On July 23, 2002, at the first hearing, Page claimed she had high blood pressure, depression, and allergies. Her hypertension caused her breathing problems, chest pain, dizziness, and headaches. She also alleged auditory and visual hallucinations. She took medication to control her hypertension and depression.

Page also testified about problems with her left shoulder, on which surgery was performed about three weeks before the hearing. She claimed that on a scale of one to ten, "I would rate it [the pain] about a six now." Page had no problems using the

---

[2]The Honorable John F. Forster, Jr., United States Magistrate Judge for the Eastern District of Arkansas.

right side of her body. She testified that she could occasionally lift five or ten pounds, and frequently lift a jug of milk.

The ALJ found that although Page had a "severe" impairment or combination of impairments, her "allegations regarding her limitations are not totally credible," and she was not disabled. On review, the Appeals Council remanded to the ALJ to further evaluate her subjective complaints, residual functional capacity, and to obtain additional evidence about Page's impairment.

In December 2003, at the second hearing, Page testified to the same general ailments, again emphasizing that her left shoulder caused her problems. On a scale of one to ten, she rated the pain at a six. She acknowledged, however, "It don't hurt constantly like it use to but it do hurt." Page said that she could lift ten pounds.

Page had no mental treatment between the first and second hearings. Asked whether any mental issues persisted, she answered: "Not as bad. I feel – I take the medication only if, you know, I need it. . . . I don't, you know, hear or see anything but I do be depressed."

The ALJ again found Page's testimony "regarding the nature and severity of her impairments and her ability to work is not totally credible." He evaluated her claim using the five-step sequential analysis in the social security regulations. *See* **20 C.F.R. §§ 404.1520, 416.920**. First, Page had not engaged in substantial gainful activity since the onset of the alleged disability. Second, although the ALJ noted that many of Page's impairments had been successfully treated, he found a combination of physical impairments that were severe. The ALJ determined, however, that her mental problems were non-severe because they "would result in at most" only a mild limitation in her ability to perform activities of daily living.

-3-

Third, the ALJ found "no evidence to show the existence of any impairment that meets the criteria of any of the listed impairments." Fourth, he determined that Page was precluded from performing past relevant work. The ALJ noted, however, that she retained the residual functional capacity to occasionally lift or carry 20 pounds, and frequently lift or carry 10 pounds. He determined that she could stand and/or walk six to eight hours a workday, and sit six to eight hours a workday. According to the ALJ, Page could engage in frequent, although not constant, reaching with her upper extremities.

At the fifth step, the ALJ found that based on Page's age, education, work experience, and residual functional capacity, "she is able to make an adjustment to other work that exists in significant numbers in the local, regional, and/or national economy." The ALJ concluded that Page was not disabled. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. The district court affirmed. Page appeals.

II.

"Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole." *Haggard v. Apfel,* 175 F.3d 591, 594 (8th Cir. 1999), *citing Clark v. Apfel,* 141 F.3d 1253, 1255 (8th Cir. 1998). "Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Haggard,* 175 F.3d at 594. "The fact that some evidence may support a conclusion opposite from that reached by the Commissioner does not alone permit our reversal of the Commissioner's decision." *Kelley v. Barnhart,* 372 F.3d 958, 961 (8th Cir. 2004); *Travis v. Astrue,* 477 F.3d 1037, 1040 (8th Cir. 2007); *Cox v. Barnhart,* 471 F.3d 902, 906 (8th Cir. 2006).

Page first argues that the "residual functional capacity assessed by the Commissioner with regard to Appellant's capacity to reach, lift and carry with the upper extremities is not based upon substantial evidence in the record as a whole." It is "the ALJ's responsibility to determine [claimant's] RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of her limitations." *Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir. 1995); **20 C.F.R. §§ 404.1545-46**, **416.945-46**.

The RFC assessed by the ALJ is supported by substantial evidence. In May 2001, Page went to a rehab clinic, complaining of neck and shoulder pain. She was treated with oral medications, steroid dose packs, and epidural steroid injection therapy. By July, a rehab physician reported that Page's neck pain was resolved, although some shoulder symptoms continued.

In June 2002, Page went to an orthopaedic center, complaining of left-arm pain. Dr. Charles A. Clark diagnosed impingement of the left shoulder. In July, he performed surgery. In August, he concluded that Page's shoulder "has excellent ROM, very little pain." In October, he noted that although Page had "tenderness anterolaterally," she also had "excellent ROM, good strength."

In March 2003, Page complained again about left-shoulder soreness and pain. Dr. Clark provided steroid injection therapy and oral medication. He recommended "a series of stretching and strengthening exercises."

In December, asked about her shoulder at the second hearing, Page stated: "It don't hurt constantly like it use to but it do hurt." Page also stated that she was right-handed, mostly working with her right hand. The state-agency doctor estimated that Page was capable of lifting and carrying up to 50 pounds occasionally and 25 pounds frequently. That doctor estimated her ability to stand or walk as six hours in an eight-hour workday, with an unlimited ability to push and pull.

The ALJ considered the medical evidence, Page's subjective complaints, and other "demeanor evidence." Assessing her individual ability to do work-related activities, the ALJ concluded that Page could engage in frequent (although not constant) reaching with her upper extremities. *See Harris v. Barnhart,* 356 F.3d 926, 929 (8th Cir. 2004) ("The RFC is a function-by-function assessment of an individual's ability to do work-related activities based upon all of the relevant evidence"), *citing Depover v. Barnhart,* 349 F.3d 563, 565 (8th Cir. 2003). Based on the medical evidence, the state-agency opinions, Page's subjective complaints, and her testimony that "it don't hurt constantly like it used to," the RFC determined by the ALJ is supported by substantial evidence.

Page next argues that substantial evidence does not support the ALJ's finding that her psychological limitations are non-severe. Step two of the regulations involves a determination, based on the medical evidence, whether the claimant has an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities. *See* **20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)**. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir. 2001), *citing Nguyen v. Chater,* 75 F.3d 429, 430-31 (8th Cir. 1996). The Commissioner counters that Page's mental impairment was non-severe, and her encounters with doctors were "linked primarily to obtain benefits, rather than to obtain medical treatment." *See Shannon v. Chater,* 54 F.3d 484, 486 (8th Cir. 1995).

Page did not allege mental impairment in her disability application. At the first administrative hearing, she claimed, "I hear things and I see things that's not there." In January 2002, Dr. Elaine Wilson conducted a neurologic examination to assess the claim of hallucinations. Dr. Wilson observed no neurological abnormality to explain Page's claim.

-6-

In March, Page had a mental evaluation. Tracy A. Harris, a primary therapist, noted that Page was "self-referred," "never received mental health counseling or psychiatric treatment in the past," and "is seeking disability and has been denied in the past." Harris evaluated Page as logical and coherent, cooperative, congruent to conversation, and apprehensive, with "no odd or bizarre behavior." With the impression that Page had only an anxiety disorder, Harris referred her to a staff psychiatrist.

On March 20, 2002, a staff psychiatrist observed that Page had a "history of having applied twice unsuccessfully for Social Security Disability for unrelated neck and left shoulder discomfort," and that "Ms. Page has solicited an attorney in Hot Springs to assist her in obtaining disability." The psychiatrist noted that although Page's mood "is subjectively depressed," her conversation was "engaging, spontaneous and appropriate." He found "no overt indication of delusions as Ms. Page describes."

At the second hearing, Page admitted having no mental treatment since the first hearing. Asked whether mental issues persisted, Page said: "Not as bad. I feel – I take the medication only if, you know, I need it. . . . I don't, you know, hear or see anything but I do be depressed." *See* ***Shannon,*** 54 F.3d at 486 ("While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem"). Based on the medical opinions and record evidence, the ALJ's conclusion that Page's mental-emotional nature is non-severe is supported by substantial evidence.

Finally, Page argues that the ALJ erred in relying upon the testimony of the vocational expert because the VE identified jobs that do not specify the frequency of pushing and pulling. She contends that for the VE's testimony to be reliable, "the definition of light work from the *Dictionary of Occupational Titles* must *include* the

-7-

ability to push and pull up to 10 pounds of force frequently." The issue is whether the ALJ properly relied on the VE's testimony.

Light work is defined by the *DOT*:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects. . . . Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

The ALJ determined that Page could perform a significant range of light work. He posed this hypothetical to the VE:

> All right, please assume an individual 45 years of age with an eighth grade education and a GED and the same past relevant work as Ms. Page. Assume an ability to stand and walk six hours out of an eight hour day; sit six hours out of an eight hour day, lift and carry 20 pounds occasionally, 10 pounds frequently; but is unable to work overhead with the non-dominant upper extremity and can occasionally push and pull with the non-dominant upper extremity; can frequently but not constantly reach with the non-dominant upper extremity.

Page does not dispute that the ALJ's hypothetical included her impairments and was properly phrased. *See Gilbert v. Apfel,* 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record"). The VE responded that a hypothetical individual with the same characteristics as Page could work as a

cashier or as a machine-tender, with over two million cashier jobs and 250,000 machine-tender positions available nationally.

The ALJ also asked the VE to consider a second hypothetical, where the individual could perform sedentary work with the same left-arm restrictions. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." **20 C.F.R. § 404.1567(a)**. The VE responded that such an individual could perform a multitude of phone-related jobs such as solicitation and order-taker. Page does not contend that she cannot perform the sedentary jobs identified. *See **Whitehouse v. Sullivan,*** 949 F.2d 1005, 1006 (8th Cir. 1991) ("Even though the expert did not specifically recite those factors in his answers, the ALJ could properly assume that the expert framed his answers based on the factors the ALJ told him to take into account"). Because the ALJ's hypotheticals included all of Page's impairments supported by the record, and the VE limited his opinion, the ALJ properly relied on his testimony. *See **Jones v. Chater,*** 72 F.3d 81, 82 (8th Cir. 1995).

Page cites *Smith v. Shalala,* 46 F.3d 45 (8th Cir. 1995). There, the "ALJ determined that Smith could not lift more than 20 pounds" and "was missing most of two fingers on his left hand and thus had a loss of finger dexterity and manipulation." The VE, however, found jobs requiring the "ability to lift 20 to 50 pounds occasionally," and "frequent fingering." *Id.* at 47. Because the ALJ determined that Smith could do those jobs, this court remanded because "the vocational expert's testimony in response to the ALJ's hypothetical questions is at odds with the *DOT*." *Id.* In this case, the VE responded to a hypothetical specific to Page's facts, and there was no conflict between the VE's testimony and the *DOT*. *See **Jones,*** 72 F.3d at 82 ("Because the vocational expert specifically limited his opinion . . . his testimony was a perfectly acceptable basis for the administrative law judge's conclusions").

-9-

Moreover, a claimant's "reliance on the *DOT* as a definitive authority on job requirements is misplaced" because "*DOT* definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." **Wheeler v. Apfel,** 224 F.3d 891, 897 (8th Cir. 2000), *quoting* **Hall v. Chater,** 109 F.3d 1255, 1259 (8th Cir. 1997). In this case, as the ALJ properly phrased the hypotheticals, he properly relied on the VE's testimony. *See* **Haggard v. Apfel,** 175 F.3d 591, 595 (8th Cir. 1999) ("A vocational expert's testimony based on a properly phrased hypothetical question constitutes substantial evidence").

III.

The judgment of the district court is affirmed.

_____