# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-3998

———————

| | | |
|---|---|---|
| Roy H. Kirby, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Michael J. Astrue, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: June 15, 2007
Filed: September 11, 2007

———————

Before LOKEN, Chief Judge, ARNOLD and COLLOTON, Circuit Judges.

———————

COLLOTON, Circuit Judge.

Roy Kirby applied for disability insurance benefits and supplemental security income under the Social Security Act. 42 U.S.C. §§ 423, 1382. An administrative law judge ("ALJ") of the Social Security Administration denied his application, concluding that he does not suffer from a severe impairment. The district court reversed and remanded for entry of an award of benefits, and the Commissioner of Social Security now appeals. We reverse and remand for entry of judgment for the Commissioner.

Kirby asserts that he is disabled because of hand tremors and psychiatric illness. In 2001, he had a hearing before an ALJ, who found that he was not disabled because his impairments were not severe. Kirby petitioned the Appeals Council for review and submitted a psychiatric evaluation by a consulting physician, Dr. Bruce Harry, as new evidence. The Appeals Council denied review, and Kirby sought judicial review. The district court reversed and remanded to the Commissioner, instructing him to develop and evaluate the record more fully and to give further consideration to Dr. Harry's report. The Commissioner did not appeal that decision, and it is not before us.

After the remand from the district court, a different ALJ conducted a second hearing. Kirby testified that he experienced tremors in both hands, and that the tremors were more severe on the right side. Kirby stated that his "hand keeps at a steady pace of shaking" that "never stops." (A.R. 465). He also testified that he suffered from at least seven seizures per day, some of which caused him to lose control of his arms, and some of which caused his entire body to convulse.

Kirby also offered Dr. Harry's report to support his claims of psychiatric illness. Dr. Harry diagnosed Kirby with an "[e]ssential [t]remor," "[d]ysthymic disorder" (depression), and a "[c]ognitive [d]isorder not otherwise specified." (*Id.* at 422). He stated that Kirby performed poorly on memory tests and the Global Assessment of Functioning. Dr. Harry concluded that given his psychiatric problems, Kirby was "unable to do even simple, repetitive tasks under the stresses inherent to a competitive environment." (*Id*. at 423). He opined that Kirby "might be able to do some simple, repetitive activities in a very low-stress, sheltered setting," but that such activity "would likely aggravate his already low self-esteem." (*Id.*).

The ALJ declined to accept Dr. Harry's opinion, and concluded that Kirby's case was "full of exaggerations by the claimant, and dubious medical diagnoses." (*Id.* at 283). He found that Kirby suffered from a "mild right upper extremity tremor," but that Kirby's physical impairments were controlled by medication, and were not severe enough to prevent him from maintaining a normal work schedule. (*Id.* at 284, 286). The ALJ also found that Kirby's psychiatric problems, including "possible mild dysth[y]mia," did not significantly limit his ability "to think, understand, communicate, concentrate, get along with other people, and handle normal work stress." (*Id.* at 285-86). The ALJ found that Kirby had only "slight abnormalities" that did not "significantly limit[] the performance of any basic work activities." (*Id.* at 283). In terms of "mental functioning," the ALJ applied 20 C.F.R. § 404.1520a, which describes a "special technique" for evaluating claims of mental impairment, and determined that Kirby had "no more than a minimal limitation in his ability to do basic work activities." (*Id.* at 285). For these reasons, the ALJ found that Kirby's impairments were not severe, and that he was therefore not disabled.

After the Appeals Council denied review, Kirby sought review in the district court. The court concluded that the ALJ gave insufficient weight to Dr. Harry's report and to Kirby's testimony about his limitations. The court reversed and remanded for entry of an award of benefits, and the Commissioner appeals that decision.

We review the district court's decision *de novo*. *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). We will uphold the Commissioner's denial of benefits, and thus reverse the district court in this case, if the ALJ's decision is supported by substantial evidence in the record as a whole. *See Simmons v. Massanari*, 264 F.3d 751, 755 (8th Cir. 2001). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision. *Id.*

II.

The Commissioner uses a five-step evaluation to determine if a claimant is disabled. *Id.* at 754; 20 C.F.R. § 416.920(a)(4). Step two of the evaluation states that a claimant is not disabled if his impairments are not "severe." *Simmons*, 264 F.3d at 754; 20 C.F.R. § 416.920(a)(4). An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); *id.* at 158 (O'Connor, J., concurring); 20 C.F.R. § 404.1521(a). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish that his impairment or combination of impairments are severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). Severity is not an onerous requirement for the claimant to meet, *see Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989), but it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing. *See, e.g., Page*, 484 F.3d at 1043-44; *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *Simmons*, 264 F.3d at 755; *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997); *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996).

We conclude that ample evidence supported the ALJ's conclusion that Kirby's hand tremors were not severe. There was substantial evidence that Kirby exaggerated or invented his physical ailments, and that any genuine impairments were slight. Kirby underwent several rounds of diagnostic testing to determine the cause of the tremors, all of which produced normal results. Dr. Ravinder Arora, a consulting physician, submitted a report stating that the tremor "seem[ed] to disappear . . . when the patient was not paying any attention." (A.R. 243). Several other doctors also contradicted Kirby's claim that the tremors "never stop[ped]," and noted that the tremors were absent or diminished when Kirby was distracted or when a doctor first

entered the room. (*Id.* at 168, 241, 307). Based on his examination and the medical records, Dr. Arora concluded that the "tremors are intentional and are willful." (*Id.* at 248).

The ALJ had additional reasons to doubt Kirby's credibility about his physical impairments. Kirby testified that he had at least seven seizures a day, and that these either left him without control of his arms, or caused his entire body to convulse. The ALJ noted that "[n]o one has ever actually witnessed one of these alleged seizures." (*Id.* at 284). Kirby reported that he experienced seizures when he was hospitalized in 2005, but no member of the hospital staff observed them, and tests indicated that none occurred. (*Id.* at 304, 366). The ALJ also found it "incredibl[e]" that Kirby experienced multiple daily seizures, presumably without warning, but that he still drove a car once a week, as he testified. (*Id.* at 284, 465).

Whatever Kirby's actual physical impairments, substantial evidence supported the ALJ's conclusion that they were not severe. Dr. Arora stated that Kirby's tremors were "[m]inimal," (*id.* at 243), which was consistent with the ALJ's observation that the tremors were not noticeable during the hearing. *See Johnson v. Apfel*, 240 F.3d 1145, 1147-48 (8th Cir. 2001) ("The ALJ's personal observations of the claimant's demeanor during the hearing [are] completely proper in making credibility determinations."). Dr. Arora also opined that Kirby "has no difficulty with sitting, standing, carrying, lifting, or handling objects," and rated Kirby's range of movements as "normal." (A.R. 243). This evidence was sufficient to show that Kirby's physical impairments did not significantly limit his ability to do basic work activities, such as walking, standing, sitting, lifting, reaching, carrying, and so on. *See* 20 C.F.R. § 404.1521(b)(1).

Substantial evidence also supported the ALJ's finding that Kirby did not suffer a significant impairment because of his psychiatric illness. Kirby's claims of psychiatric problems have always been vague. His initial disability form did not claim

-5-

a psychiatric basis for disability, and merely stated that his hand tremors might be caused by "pantic or anxioux" [*sic*]. (A.R. at 102, 105). Perhaps his most specific claim is that mental problems affect his memory. The medical evidence for this claim is inconclusive, with memory tests producing opposite results. In 2000, Kirby achieved a perfect score on two memory tests, (*id.* at 205), and in 2002, Dr. Arora administered memory tests and reported that Kirby's memory was intact. (*Id.* at 242). But in March 2003, Kirby performed poorly on a memory test, (*id.* at 435), and two months later, Dr. Harry opined that Kirby's memory problems ranged from moderate to severe. (*Id.* at 421). Then in 2005, the most recent testing in the record, Kirby's hospital notes stated that his "[r]ecent, remote, and past memory was intact." (*Id.* at 351).

Kirby offered little evidence of any other mental impairment. The ALJ observed that Kirby "has never had any formal treatment by a psychiatrist, psychologist, or other mental health professional over any long-term basis, which he presumably would have if he were . . . mentally disturbed." (*Id.* at 285). At the hearing, Kirby "displayed no obvious signs of depression, anxiety, memory loss, or other mental disturbance." (*Id.*). Dr. Arora opined that while Kirby may have suffered from depression, his "[c]alculation, recall, comprehension, repetition, judgment, and behavior were normal," and that he "could follow commands." (*Id.* at 243). This opinion conflicts with Dr. Harry's view that Kirby could not perform even "simple, repetitive tasks under the stresses inherent to a competitive environment." (*Id.* at 423).

It is the function of the ALJ to weigh conflicting evidence and to resolve disagreements among physicians. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). The district court's order mistakenly stated that Dr. Harry's opinion was entitled to special deference because he was a treating physician. As the ALJ recognized, Dr. Harry, like Dr. Arora, was a consulting physician, and Dr. Harry's opinion thus deserves no special weight. The ALJ was entitled to give less weight to

Dr. Harry's opinion, because it was based largely on Kirby's subjective complaints rather than on objective medical evidence. *Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005). While Kirby argues that the ALJ failed fully to consider Dr. Harry's opinion, the ALJ did consider that opinion and decided to give it "little weight." This was a permissible determination, because Dr. Arora's contrary view was supported by better medical evidence.

We thus do not agree with the district court that the ALJ gave insufficient weight to Dr. Harry's report and to Kirby's testimony about his limitations. Substantial evidence in the record as a whole supports the ALJ's conclusion that Kirby's physical and mental impairments were slight, and that they did not significantly limit his ability to perform basic work activities. The ALJ plainly believed that Kirby's impairments had no more than a minimal effect on his ability to work, and this conclusion is supported by the record. *See Henderson v. Sullivan*, 930 F.2d 19, 21 (8th Cir. 1991). Accordingly, the ALJ permissibly found that Kirby's impairments were not severe, and that Kirby was not disabled.

\* \* \*

For these reasons, the judgment of the district court is reversed, and the case is remanded with instructions to enter judgment for the Commissioner.

_____