# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3447

_____

Sharon R. Clevenger,

        Appellant,

    v.

Social Security Administration,

        Appellee.

\*    Appeal from the United States
\*    District Court for the
\*    Eastern District of Arkansas.

_____

Submitted: April 18, 2008
Filed: June 4, 2009

_____

Before MURPHY, COLLOTON, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Sharon R. Clevenger appeals the decision of the district court,[1] which upheld the decision of the Commissioner of Social Security to deny her application for disability benefits. We affirm.

_____

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

I.

Clevenger first visited her treating physician, Dr. Stephen Carter, in March 2000, complaining of joint and back pain.  Dr. Carter diagnosed her with polyarticular arthralgias, prescribed prescription anti-inflammatories, and ordered additional testing. During visits in April and May 2000, Dr. Carter noted that she probably had fibrocytis, and prescribed more medication.  Clevenger saw Dr. Carter several more times in 2000, and continued to report joint and back pain.  She visited him again in February 2001, and reported that she experienced knee pain every "once in a while," but that an earlier-prescribed medication was helping "a lot" with her fibrocytis.

In May 2001, Dr. Carter noted that Clevenger had "[p]ersisting chronic pain," and referred her to a rheumatologist, Dr. Cummins Lue.  Dr. Lue's examination later that month revealed pain in Clevenger's shoulders and back, but found that she retained full range of motion and full motor strength in her limbs.  Dr. Lue "did not see signs of an inflammatory arthritis."  He noted that some of Clevenger's "features are fibromyalgia like, but patient does not have numbers of tender points seen in classic fibromyalgia."  Dr. Lue recommended physical therapy in the form of water exercises and stretching.  Clevenger cancelled a follow-up appointment with Dr. Lue but began seeing him again in March 2002, at which time Dr. Lue learned that she had not undergone the prescribed physical therapy because her insurance had lapsed. During subsequent visits, Dr. Lue noted slight tenderness in her joints but no swelling.

In July 2002, Dr. Lue referred Clevenger to Dr. Larry Nguyen, an orthopedic specialist, for her knee pain.  Dr. Nguyen diagnosed Clevenger with bilateral patellofemoral syndrome, and noted that the condition was not serious enough to require surgery. Clevenger was given knee sleeves, but she did not wear them "all the time."

Soon after visiting with Dr. Nguyen, Clevenger applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423, claiming disability beginning July 12, 2001, from an ulcer, a learning disability, and fibromyalgia. Clevenger completed a supplemental interview form on which she reported that she was able to engage in various activities, including doing laundry, washing dishes, changing sheets, ironing, preparing meals, driving, attending church, and visiting friends and relatives. A state agency consultant, Dr. Steve Owens, reviewed Clevenger's medical records. Based on his review, Dr. Owens concluded that Clevenger was capable of carrying or lifting ten pounds frequently and twenty pounds occasionally. He also concluded that Clevenger could sit or stand for about six hours (with normal breaks) in an eight-hour work day. The disability examiner determined that Clevenger was not disabled, and denied her claim. Clevenger appealed the decision and requested a hearing before an administrative law judge ("ALJ").

In the meantime, Clevenger continued to see both Dr. Carter and Dr. Lue. In October 2002, Dr. Lue noted that her condition was "overall improved" because she was taking a medication called sulfasalazine. She missed an appointment with Dr. Lue in December 2002, but met with him in February 2003. In his notes from that visit, Dr. Lue described her as having "a combination of probable low grade seronegative polyarthritis in the hands, patellofemoral joint syndrome, and soft tissue rheumatic pains." Dr. Lue questioned, however, "how regular" Clevenger was taking her prescribed medications, noting that she missed her appointment in December and had not taken sulfasalazine for two weeks.

Clevenger was evaluated at the University of Arkansas for Medical Sciences Rheumatology Clinic in November 2003 by Dr. Ricardo Zuniga. Dr. Zuniga found that Clevenger had "painless" full range of motion in her neck, spine, shoulders, elbows, wrists, hands, hips, knees, ankles, and feet, but she did test positive for eighteen of eighteen fibromyalgia tender points. Dr. Zuniga concluded that she had

symptoms "very suggestive of fibromyalgia syndrome," but he did not think that she had "an inflammatory condition." For treatment, he recommended water aerobics.

Clevenger returned to Dr. Carter in January 2005, for the first time since October 2002. She appeared in his office with "a bunch of forms needing filled out by her attorney with regard to her fibromyalgia." Although Dr. Carter's notes from the visit do not show that he conducted a medical examination, he did complete a residual functional capacity ("RFC") questionnaire. On the questionnaire, Dr. Carter stated that Clevenger experienced pain eighty-five percent of the time, with the patient reporting level ten (*i.e.*, severe) pain "at times." He also stated that Clevenger had tried anti-inflammatories and muscle relaxants with "limited success." As for functional limitations, Dr. Carter reported that Clevenger's symptoms were severe enough that they interfered "often" with her attention and concentration, imposed a moderate limitation on her ability to deal with work stress, and imposed significant limitations on her ability to engage in repetitive reaching, handling, or fingering. According to Dr. Carter, Clevenger could not sit or stand continuously for more than twenty minutes at a time, could not lift or carry more than ten pounds in a competitive work situation, and would frequently need to take unscheduled breaks throughout an eight-hour work day. Asked the earliest date that his description of Clevenger's symptoms and limitations applied, Dr. Carter answered January 2002.

Clevenger was granted a hearing before an ALJ in February 2005. At the hearing, she testified that she was unable to work because of severe pain in her neck, shoulders, back, knees, and hands. There were days, she claimed, that her pain was so great that she could not get out of bed. She stated that to control the pain, she took only over-the-counter medicines, like Tylenol, and that she did not take narcotic medicine because she had a "fear of getting hooked on them."

The ALJ issued a decision denying Clevenger's claim for disability benefits. The ALJ agreed that the medical evidence supported the assumption that "Mrs.

Clevenger does experience some limitations due to polyarthritic arthralgias and fibromyalgia," but rejected Dr. Carter's January 2005 RFC assessment. The ALJ explained that the assessment was completed more than two years after Clevenger's last visit to the doctor, and that it was not supported by the other evidence in the record. The ALJ cited the success of prescription medications in controlling her symptoms, her refusal to take narcotics for her pain, her cancellation of a follow-up appointment with Dr. Lue, and her failure to attend physical therapy as prescribed. The ALJ also noted that Clevenger's daily activities were not as limited as one would expect, given her subjective description of symptoms and limitations. The ALJ ultimately concurred with the state agency consultant, and concluded that on her date last insured, which was March 31, 2003, Clevenger "retained the residual functional capacity to perform the exertional and non-exertional requirements of the full range of light work on a sustained basis." The Appeals Council denied review, so the ALJ's opinion became the final decision of the Commissioner.

The district court upheld the Commissioner's decision. The court concluded that the ALJ gave sufficient reasons for discounting Dr. Carter's January 2005 opinion, because the opinion was given two years after her last documented examination with the doctor, conflicted with Dr. Carter's own statement that Clevenger's exams were usually unremarkable, and was inconsistent with the opinions of Dr. Lue and Dr. Zuniga, specialists who treated Clevenger during the relevant period. The court also found that the ALJ gave adequate reasons, consistent with *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), for concluding that Clevenger's subjective complaints were not fully credible.

II.

Like the district court, we consider whether the ALJ's decision is supported by substantial evidence on the record as a whole. *Coleman v. Astrue*, 498 F.3d 767, 769 (8th Cir. 2007). "Substantial evidence is evidence that a reasonable mind would find

adequate to support a decision, considering both evidence that detracts from and evidence that supports the Commissioner's decision." *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).

Clevenger's lead argument on appeal is that the ALJ improperly disregarded the January 2005 opinion of Dr. Carter, a treating physician. A treating physician's opinion is due controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record, 20 C.F.R. § 404.1527(d)(2), but an ALJ need not accept the opinion if it does not meet those criteria. *E.g.*, *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006); *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005). Clevenger contends that Dr. Carter was the only physician to opine on her functional limitations, and that because there are no conflicting opinions on the specific issue of limitations, Dr. Carter's determination must control.

We conclude that substantial evidence supports the ALJ's decision not to follow Dr. Carter's opinion. Although Dr. Carter opined in January 2005 that Clevenger's symptoms of pain were present as of January 2002, the ALJ reasonably concluded that this opinion was inconsistent with substantial evidence on the record as a whole. Dr. Carter had not seen Clevenger for more than two years when he gave the opinion in question. Clevenger stresses that Dr. Carter's opinion was recollective of his previous treatment, but Dr. Carter's notes from his treatment of Clevenger in 2002 do not corroborate his January 2005 statement that Clevenger's pain in her neck, upper back, and knees was present eighty-five percent of the time, or that the pain was at the severe end of the spectrum. In March 2002, Dr. Carter noted that Clevenger had a long history of "fibromyalgias and arthralgias," but wrote that apart from a butterfly rash, everything was "ok on exam." In July 2002, Clevenger reported "mild" stomach pains, but Dr. Carter made no mention of any other pain comparable to that recorded in his January 2005 questionnaire.

Clevenger suggests that the absence of corroborating notes from Dr. Carter during 2002 is explained by the fact that other physicians were treating Clevenger at that time for her complaints of fibromyalgia. We conclude, however, that the ALJ reasonably construed the reports of these other treating physicians as inconsistent with the severe symptoms described in Dr. Carter's 2005 questionnaire. Dr. Lue treated Clevenger regularly during 2001 and 2002. His treatment records reflect fibromyalgia-like features in May 2001, but "no significant tenderness" and fewer tender points than seen in classic fibromyalgia. He reported "diffuse aches and pains in multiple joints" in March 2002, "recurrent myofascial types of pain" and "[s]light tenderness" in May 2002, and "significant pain in her hands" but "only minimal tenderness" in several joints and "slight discomfort" over her shoulders in July 2002. By October 2002, Dr. Lue found that Clevenger's condition was "overall improved" because of medication, and that she had "slight tenderness" but no swelling in several joints. Dr. Zuniga examined Clevenger in November 2003. He noted eighteen positive tender spots for fibromyalgia, but wrote that Clevenger enjoyed "painless" full range of motion in her neck, spine, shoulders, elbows, wrists, hands, hips, knees, ankles, and feet.

Taken together, Dr. Carter's records from 2002 and the records of treating physicians Dr. Lue and Dr. Zuniga are inconsistent with the portrait painted by Dr. Carter's questionnaire in January 2005. There is no mention during 2001 or 2002 of severe pain. Dr. Lue's records indicate an improvement of Clevenger's condition and only minimal or slight pain by the fall of 2002. Dr. Zuniga's report of "painless" range of motion throughout Clevenger's body in November 2003 is hard to square with Dr. Carter's assertion in 2005 that Clevenger experienced pain in several of the same locations eighty-five percent of the time since January 2002. While none of the doctors was asked to estimate functional limitations during 2002, the inconsistency between the 2005 questionnaire's description of symptoms and the records of the treating physicians in 2002 gave the ALJ a sufficient basis to discredit the description of symptoms and the corresponding limitations set forth in Dr. Carter's later opinion.

Clevenger also appeals the ALJ's finding that her subjective complaints of pain were not fully credible. We agree with the district court that the ALJ adequately discussed the *Polaski* factors in finding that Clevenger was not fully credible. *See Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered."). There is mixed evidence in the record concerning the effectiveness of over-the-counter medications and Clevenger's willingness to take narcotic medicines to treat her alleged pain, but it was not unreasonable for the ALJ to rely on Dr. Lue's report from October 2002 that Clevenger was "overall improved" since her last visit after taking medication at full dose, *see Harvey v. Barnhart*, 368 F.3d 1013, 1015 (8th Cir. 2004) (concluding that it is reasonable for an ALJ to discount a claimant's subjective complaints of disabling pain when the pain is controllable by medication), and Clevenger's testimony at the hearing that she took only over-the-counter pain medications. *See Goodale v. Halter*, 257 F.3d 771, 774 (8th Cir. 2001) (concluding that an ALJ may reasonably discredit a claimant's testimony about disabling pain when the claimant takes nothing stronger than over-the-counter medications to alleviate her symptoms). Our cases admittedly send mixed signals about the significance of a claimant's daily activities in evaluating claims of disabling pain, but Clevenger did report that she engaged in an array of such activities – including doing laundry, washing dishes, changing sheets, ironing, preparing meals, driving, attending church, and visiting friends and relatives – and it was not unreasonable under *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001), and *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987), for the ALJ to rely on this evidence to infer that Clevenger's assertion of disabling pain was not entirely credible. We therefore conclude that the ALJ's decision is supported by substantial evidence on the record as a whole.

The judgment of the district court is affirmed.

_____