# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3041
_____

David A. Perks

*Plaintiff - Appellant*

v.

Michael J. Astrue, Commissioner, Social Security Administration

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: March 13, 2012
Filed: August 7, 2012
_____

Before MELLOY, SMITH, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

David A. Perks appeals the district court's[1] affirmance of the Social Security Commissioner's (Commissioner) decision to deny him disability benefits and

_____

[1]The Honorable Jerome T. Kearney, United States Magistrate Judge for the Eastern District of Arkansas, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

supplemental security income under Titles II and XVI of the Social Security Act (the Act). In this appeal, Perks raises two issues for review. First, he claims that substantial evidence does not support the Administrative Law Judge's (ALJ) finding that he was not disabled, and, second, he asserts that the Appeals Council failed to consider all evidence submitted to it, including additional evidence Perks submitted after the ALJ issued his decision.

Perks applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income under Title XVI of that Act, 42 U.S.C. § 1382, alleging that he had been disabled since April 2, 1998. His application was denied initially and on reconsideration. An ALJ conducted a hearing on April 7, 2009, and subsequently denied his application. On appeal to the Appeals Council, Perks submitted additional evidence. The Appeals Council noted the receipt of the additional evidence but denied further review of Perks's claim. The district court subsequently affirmed the decision of the ALJ. For the reasons stated below, we affirm.

I.

In 1988, Perks suffered back injuries in an automobile accident. In 1991, he underwent a hemilaminectomy and disc excision to improve his back condition. Although Perks reported that the surgery offered relief, he alleged that the pain began to return about five years later and worsened over time. Also in 1991, Perks began work as an electronic tool repairman at a nuclear power plant. He maintained this job until 1998. After 1998, Perks performed various other jobs, but he alleged that his back and leg pain prevented him from having a successful work history. He lacked any substantial earnings after 1998.

Perks claimed that his family physician, Dr. Gary Russell, began treating him in 1997 for his back pain. Despite this assertion, Perks did not produce any medical

records to support this allegation. In 2006, Dr. Russell referred Perks to Dr. Butchaiah Garlapati, a pain specialist, for treatment. On June 16, 2006, Dr. Garlapati administered an injection at the S1 joint to relieve pain. Perks reported during the July 28, 2006 follow-up examination that the injection had worked well and requested an additional injection which Dr. Garlapati administered. Dr. Garlapati also changed Perks's prescription from the pain-control medicine hydrocodone to methadone. Dr. Garlapati's progress notes on January 25, February 23, and March 22, 2007, reflect that methadone worked well to ease Perks's pain. At the January 25 appointment, Perks requested that Dr. Garlapati write a letter stating that Perks was unable to work due to his back pain. Instead of agreeing to write the letter, Dr. Garlapati recommended that Perks not work until a Functional Capacity Evaluation could be completed. The record does not reflect that Perks ever underwent the evaluation. At an April 23, 2007 appointment, Perks stated that he had pain in his left shoulder and right hip areas but stated that the shoulder pain was due to sleeping incorrectly on his left shoulder. When Dr. Garlapati saw Perks on May 22, 2007, Perks reported that he experienced increased pain one day a month.

At the request of the ALJ, Perks underwent a one-time orthopedic consultative examination with Dr. Ted Honghiran on June 23, 2008. Dr. Honghiran submitted a letter stating his recommendation that Perks "should return to a vocational school to learn a new job that he can do at a desk" such as "a computer skill that he can work at a desk." Despite this recommendation, Dr. Honghiran also completed a medical evaluation questionnaire stating that in an eight-hour work day, Perks could sit for a total of up to four hours, stand for a total of up to two hours, and walk for a total of up to two hours. When the ALJ questioned the vocational expert as to whether there were any jobs that Perks could perform with these limitations, the vocational expert indicated there were not because he was unaware of any job that would allow a person to walk away from a work station for up to two hours a day.

The ALJ determined Perks had the residual functional capacity (RFC) to sit six hours in a day, with a limit of sitting one hour without changing positions, and to stand or walk two hours in a day, with a limit of one hour at a time without changing positions. In reaching this finding, the ALJ held that Dr. Honghiran's assessment—that Perks could only sit for four hours of a day—was not supported by the overall evidence in the record. The ALJ also noted that Dr. Honghiran stated in his assessment that Perks could perform sedentary-level work, suggesting that the assessment was internally inconsistent. Based on the ALJ-determined RFC, along with Perks's age, education, and work experience, the vocational expert determined that there were a substantial number of jobs in the local and national economy that Perks could perform such as small production machine operator, food order clerk, and production inspector. Accordingly, the ALJ determined that Perks was not disabled for purposes of the Social Security Act.

After the ALJ issued his decision, Perks retained new counsel and sought review of the ALJ's decision with the Appeals Council. This new counsel submitted a brief of the issues along with additional evidence in the form of a narrative statement from Dr. Russell and a 2007 MRI report. In its denial of Perks's request for review, the Appeals Council noted that it had received and considered the additional evidence but "found that this information does not provide a basis for changing the [ALJ's] decision."

In this appeal, Perks raises two issues for review. First, he argues that substantial evidence does not support the ALJ's findings as to his RFC as it conflicts with the medical determination of consultative physician Dr. Honghiran and is otherwise in conflict with the evidence in record. Second, he claims that the Appeals Council improperly denied review of his case after he submitted additional evidence.

We review de novo the district court's decision to uphold the Commissioner's denial of disability benefits. Reutter ex rel. Reutter v. Barnhart, 372 F.3d 946, 950 (8th Cir. 2004). We will uphold the ALJ's decision to deny benefits if that decision is supported by substantial evidence in the record as a whole. See Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. We consider the evidence that both supports and detracts from the ALJ's decision. Ellis v. Barnhart, 392 F.3d 988, 993 (8th Cir. 2005). We will not reverse simply because some evidence supports a conclusion other than that reached by the ALJ. Pelkey v. Barnhart, 433 F.3d 575, 578 (8th Cir. 2006). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Likewise, "we defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." Pelkey, 433 F.3d at 578 (quoting Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005)).

The Social Security Administration follows a well-recognized, five-step process for considering disability claims.

> In step one, the ALJ decides whether the claimant is currently engaging in substantial gainful activity; if the claimant is working, he is not eligible for disability insurance benefits. 20 C.F.R. § 404.1520(b). In step two, the ALJ determines whether the claimant is suffering from a severe impairment. If the claimant is not suffering a severe impairment, he is not eligible for disability insurance benefits. 20 C.F.R. § 404.1520(c). At the third step, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in Appendix 1 of the regulations (the "listings"). 20 C.F.R. Pt. 404, Subpt.

P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, he is entitled to benefits; if not, the ALJ proceeds to step four. 20 C.F.R. § 404.1520(d). At step four, the ALJ determines whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. If the claimant remains able to perform that past relevant work, he is not entitled to disability insurance benefits. 20 C.F.R. § 404.1520(f). If he is not capable of performing past relevant work, the ALJ proceeds to step five and considers whether there exist work opportunities in the national economy that the claimant can perform given his or her medical impairments, age, education, past work experience, and RFC. 20 C.F.R. § 404.1520(g). If the Commissioner demonstrates that such work exists, the claimant is not entitled to disability insurance benefits. Id.

McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011).

At issue in this case is the ALJ's RFC determination at step four. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007). "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." Id. at 619-20 (citing 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006)).

First, Perks argues that the ALJ erred in rejecting the functional limitations determined by Dr. Honghiran, the consultative physician. Second, he claims that even if rejection of the consultative physician's opinion was correct, there is not substantial evidence to support the ALJ's RFC determination. As to the first contention, the ALJ did not completely dismiss the functional limitations stated by Dr. Honghiran. Instead the ALJ only rejected Dr. Honghiran's conclusion that Perks could only sit for four hours of an eight hour workday. The ALJ noted that while Dr. Honghiran's stated functional limitations limited Perks to four hours of sitting in a workday, in the same

report Dr. Honghiran suggested that Perks could gain further training to qualify for a desk job. The ALJ found that this suggestion was inconsistent with the four-hour sitting limitation. We have previously held that "[p]hysician opinions that are internally inconsistent . . . are entitled to less deference than they would receive in the absence of inconsistencies." Guilliams, 393 F.3d at 803. In light of the inconsistency here, the ALJ was entitled to discredit Dr. Honghiran's four-hour sitting limitation.

Next we consider whether the six-hour sitting limitation found by the ALJ is supported by the record. Medical records, physician observations, and the claimant's subjective statements about his capabilities may be used to support the RFC. See Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). While the ALJ retains the authority to determine the RFC and that decision must be supported by some medical evidence, "the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). To support the RFC determination that Perks could sit for up to six hours of an eight-hour workday, the ALJ recalled that Perks had back surgery in 1991 and that Perks claimed the back pain did not return until 1996. Despite Perks's claim that the pain returned in 1996, the ALJ noted there was no evidence in the record showing Perks received treatment for the back pain until June 2006 when he saw Dr. Garlapati. In January 2007, when Perks asked Dr. Garlapati to draft a letter stating Perks was unable to work, Dr. Garlapati instead suggested that Perks undergo a Functional Capacity Evaluation to determine his work limitations. There was no evidence in the record to show that Perks ever underwent such an evaluation. The ALJ recognized Perks received conservative treatment in the form of medication for his back pain and Perks reported that the medication was working well to cover his pain.

Among the considerations the ALJ takes into account when determining a claimant's RFC is the claimant's subjective complaints of pain. When analyzing a claimant's subjective complaints of pain, the ALJ must examine: (1) the claimant's daily activities, (2) the duration, frequency and intensity of the pain, (3) precipitating

and aggravating factors, (4) the dosage, effectiveness and side effects of any medication, and (5) functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ may properly discount the claimant's testimony where it is inconsistent with the record. Eichelberger, 390 F.3d at 590. Here, the ALJ found Perks's claim that he suffers from back pain was substantiated by the record, but that the severity of his pain was not disabling. The ALJ reached this conclusion by taking into account the medical treatment Perks received and Perks's normal activities, including meal preparation, mowing his yard on a riding mower, shopping for food, and maintaining the family's finances. See Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."). We hold that substantial evidence in the record supports the ALJ's determination that Perks retained the ability to sit for six hours of an eight-hour workday.

III.

After the ALJ issued his decision, Perks requested review by the Appeals Council. He submitted new evidence in the form of Dr. Russell's narrative opinion of Perks's condition and a copy of an MRI of his back. The Appeals Council denied Perks's request for review, finding that the additional evidence he submitted did not provide a basis for changing the ALJ's decision.

Under the regulations, the Appeals Council must evaluate the entire record, including any new and material evidence submitted to it after the ALJ's decision. See 20 C.F.R. § 404.970(b). The Appeals Council "shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision." Id. "It will then review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record." Id.

Perks argues that the Appeals Council's denial must be reversed because it failed to consider the entire record and because the new and material evidence shows a lack of substantial evidence supporting the ALJ's decision. Because the Appeals Council denied review, finding that the additional evidence did not "provide a basis for changing the [ALJ's] decision," we do not review the Appeals Council's decision to deny review, rather we determine if the record as a whole, including evidence that is new and material, supports the ALJ's determination. Cunningham v. Apfel, 222 F.3d 496, 500 (8th Cir. 2000).

We conclude that the additional evidence submitted to the Appeals Council does not undermine the ALJ's RFC determination. As to the MRI report, we conclude that it was not new evidence. "To be 'new,' evidence must be more than merely cumulative of other evidence in the record." Bergmann v. Apfel, 207 F.3d 1065, 1069 (8th Cir. 2000). While the MRI report itself was not in the record prior to the ALJ's decision, the opinions of the doctors who had reviewed the MRI report were part of the record before the ALJ. Accordingly, the report is cumulative of the evidence in the record and considered by the ALJ, and thus it is not new and is not considered.

As a treating physician, Dr. Russell's opinion is entitled to substantial weight "unless it is unsupported by medically acceptable clinical or diagnostic data." Kirby v. Sullivan, 923 F.2d 1323, 1328 (8th Cir. 1991). Although Dr. Russell reviewed Perks's surgical and treatment history and medical complaints, his opinion does not indicate that it is supported by clinical or diagnostic data. Considering this additional evidence with the evidence before the ALJ does not lead to the conclusion that the ALJ would have reached a different result or that the ALJ's decision is unsupported by substantial evidence in the record as a whole. See Kitts v. Apfel, 204 F.3d 785, 786 (8th Cir. 2000) (per curiam) ("When the Appeals Council has considered new and material evidence and declined review, we must decide whether the ALJ's decision is supported by substantial evidence in the whole record, including the new evidence.").

## IV.

The judgment of the district court is affirmed.

_____