# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-3091

_____

Royce Glen McDade

*Plaintiff - Appellant*

v.

Michael J. Astrue, Commissioner, Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs

_____

Submitted: February 14, 2013
Filed: July 29, 2013

_____

Before RILEY, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Royce Glen McDade applied for disability insurance benefits and supplemental security income in February 2008. McDade now appeals the district court's[1] decision upholding the Social Security Commissioner's denial of his application. We affirm.

I.

McDade applied for disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income under Title XVI of that Act, 42 U.S.C. § 1382, alleging disability beginning May 26, 2007. His claims were denied initially and on reconsideration. McDade then requested a hearing before an administrative law judge ("ALJ").

At the hearing, McDade provided testimony regarding his various medical issues, including respiratory distress; heart problems; diabetes; obesity; arthritis; depression; anxiety; and severe pain in his neck, back, and pelvis. In particular, McDade described disabling pain in his back, neck, and pelvis. McDade's mother also testified, noting that she has to assist McDade with some daily activities, such as laundry and some housework, and that McDade lies down for several hours each day and sometimes just stares into space. The ALJ also reviewed McDade's extensive history of medical treatment. Applying the familiar five-step sequential evaluation for disability,[2] the ALJ determined that McDade has a severe impairment and is unable to perform his past relevant work, but that he is able to perform the full

---

[1] The Honorable Barry A. Bryant, United States Magistrate Judge for the Western District of Arkansas, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

[2] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." King v. Astrue, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

range of sedentary work and is not disabled. Subsequently, the Appeals Council denied McDade's request for review. The district court affirmed the denial of benefits.

On appeal, McDade alleges that the ALJ erred by (1) improperly evaluating McDade's subjective complaints of pain, (2) failing to give adequate weight to the opinions of Drs. Clary, Hurst, and Tucker, (3) failing to elicit necessary testimony from the vocational expert at Step 5, and (4) failing to properly apply the Adult Listing of Impairments at Step 3.

II.

We review the district court's decision upholding the denial of social security benefits de novo. See Perks v. Astrue, 687 F.3d 1086, 1091 (8th Cir. 2012). "We will uphold the ALJ's decision to deny benefits if that decision is supported by substantial evidence in the record as a whole." Id. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). We consider both evidence that detracts from the ALJ's decision, as well as evidence that supports it, see Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011), but we will not reverse simply because some evidence supports a conclusion other than that reached by the ALJ, Pelkey v. Barnhart, 433 F.3d 575, 578 (8th Cir. 2006).

A.

First, McDade argues the ALJ erred by not giving sufficient weight to his subjective complaints of pain. When analyzing a claimant's subjective complaints of pain, the ALJ must consider the five factors from Polaski v. Heckler: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of

medication; and (5) functional restrictions. See 739 F.2d 1320, 1322 (8th Cir. 1984); see also 20 C.F.R. §§ 404.1529, 416.929. "The ALJ [is] not required to discuss methodically each Polaski consideration, so long as he acknowledge[s] and examine[s] those considerations before discounting [the claimant's] subjective complaints." Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). "Because the ALJ [is] in a better position to evaluate credibility, we defer to his credibility determinations as long as they [are] supported by good reasons and substantial evidence." Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).

Here, the ALJ cited the Polaski factors in his decision and actually credited many of McDade's subjective complaints of pain. To the extent the ALJ discredited or discounted McDade's assertion that his pain was completely disabling, we find the ALJ provided good reasons supported by substantial evidence. The ALJ noted McDade was not unduly restricted in his daily activities, which included the ability to perform some cooking, take care of his dogs, use a computer, drive with a neck brace, and shop for groceries with the use of an electric cart. The ALJ also noted that McDade did not take any long-term narcotic medication for pain relief, despite his allegations of chronic disabling pain. Finally, the ALJ concluded, based on several aspects of McDade's medical record, that McDade's "description of the severity of the pain has been so extreme as to appear implausible." See Admin. R. 27 (citing evidence of only minor lumbar spine abnormalities, the absence of irregularities in McDade's cervical spine, and a neurologist's report that McDade suffered from "some genuine weakness and some not so genuine weakness"). Because the ALJ properly applied Polaski and provided valid reasons for discounting McDade and his mother's testimony, we find the ALJ did not err in discounting the most severe subjective complaints of pain. See Perks, 687 at 1093 (affirming ALJ's decision to discount claimant's reports of disabling back pain where claimant's normal activities included "meal preparation, mowing his yard on a riding mower, shopping for food, and maintaining the family's finances").

B.

McDade also argues the ALJ gave inadequate weight to the medical opinions of Drs. Clary, Hurst, and Tucker. We disagree and find the ALJ properly weighed these opinions.

1.

Dr. Patrick Clary is a chiropractor who began treating McDade after a car accident in 2007. Although a chiropractor is not an acceptable medical source for determining disability, see 20 C.F.R. §§ 404.1513(a), 416.913(a), evidence from chiropractors may be used to show "the severity of [claimant's] impairment(s) and how it affects [claimant's] ability to work," see §§ 404.1513(d), 416.913(d). McDade argues that the ALJ improperly disregarded Dr. Clary's evidence regarding McDade's impairments, including a series of spinal impairment ratings.

We agree with McDade that Dr. Clary's evidence, including his reports of McDade's cervical and lumbar spine permanent impairment ratings, could be considered by the ALJ in assessing the severity of McDade's impairments. Indeed, the ALJ did consider Dr. Clary's submissions. See Admin. R. 25. But we do not agree with McDade's argument that the ALJ improperly weighed Dr. Clary's evidence. The ALJ determined that McDade's back pain was a severe impairment that limited him to sedentary work, suggesting that Dr. Clary's evidence was at least partially credited. And based on the record before us, the ALJ's conclusion regarding McDade's back pain appears consistent with the particular impairment ratings Dr. Clary assigned (25-28% permanent impairment rating for cervical spine, and 17.7-20.4% permanent impairment rating for lumbar spine). See id. at 335-36. McDade's own letter to the court explains that "[f]or individuals who work in sedentary jobs, there may be no decline in their work ability although their overall functioning is decreased. . . . [A] 30% impairment rating does not correspond to a 30% reduction in

work capability." Appellant's 28(j) Letter, 4, Feb. 2, 2013. Thus, Dr. Clary's impairment ratings, standing alone, provide little insight into how these spinal impairments would impact McDade's ability to work. See id. ("[I]mpairment ratings are not intended for use as direct determinants of work disability."). Thus, we conclude that the ALJ gave appropriate weight to Dr. Clary's evidence.

2.

Dr. Katharine Hurst is a general practitioner who began treating McDade in 1999. McDade visited Dr. Hurst nearly 20 times at the Charitable Christian Medical Clinic. In June 2007, Dr. Hurst noted that McDade was significantly disabled and needed at least temporary disability benefits because he lacked insurance. Admin. R. 23-24. In September 2009, Dr. Hurst wrote a letter stating McDade's medical issues "make it very difficult for him to maintain gainful employment," and requesting that he receive some form of assistance, such as Medicare, since McDade's medical issues exceeded the scope of the clinic's ability. Id. at 625-27. Dr. Hurst stated that she did not think McDade could work an eight-hour day in welding or truck driving. Id. at 626. McDade argues the ALJ, who largely discounted Dr. Hurst's conclusions, id. at 27, did not give appropriate weight to Dr. Hurst's evidence and opinions.

After careful review, we find the ALJ's decision to discount many of Dr. Hurst's conclusions was appropriate. First, the ALJ correctly noted that Dr. Hurst appeared to rely largely on McDade's own subjective reports of symptoms and limitations. See Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) ("ALJ was entitled to give less weight to [physician's] opinion, because it was based largely on [claimant's] subjective complaints rather than on objective medical evidence."). Second, Dr. Hurst's opinion regarding McDade's difficulty maintaining employment is conclusory, and she fails to explain why she reached this conclusion. See Hamilton v. Astrue, 518 F.3d 607, 610 (8th Cir. 2008) ("[A] treating physician's opinion does not deserve controlling weight when it is nothing more than a conclusory

statement."). Finally, the ALJ noted that it was unclear whether Dr. Hurst's use of the term "disabled" comported with the use of the term by the Social Security Act and regulations. Indeed, Dr. Hurst's only specific mention of employment was her reference to McDade's inability to perform his past relevant work (i.e., welding or truck driving), which is consistent with the ALJ's decision limiting McDade to sedentary work. And even if Dr. Hurst had intended to assert that McDade was disabled, this judgment is reserved for the Commissioner. See Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) ("A medical source opinion that an applicant is 'disabled' or 'unable to work,' however, involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight."). The ALJ was entitled to discount the conclusions of Dr. Hurst.

3.

Dr. Paul Tucker is a neurologist who saw McDade on several occasions between 2008 and 2010. The ALJ considered evidence from several of McDade's visits with Dr. Tucker in 2008. See Admin. R. 26. Additionally, McDade submitted a letter from Dr. Tucker written in early 2010, after the ALJ's hearing, to the Appeals Council. See Add. to Br. of App. 51. The parties disagree about whether Dr. Tucker's post-hearing letter was "new" and "material," and thus required to be considered by the Appeals Council. See Perks v. Astrue, 687 F.3d 1086, 1093 (8th Cir. 2012) ("[T]he Appeals Council must evaluate the entire record, including any new and material evidence submitted to it after the ALJ's decision." (citing 20 C.F.R. § 404.970(b)). But even assuming, without deciding, that Dr. Tucker's post-hearing letter does satisfy Perks, we conclude that this evidence does not undermine the ALJ's determination in this case.

When the Appeals Council denies review of an ALJ's decision after reviewing new evidence, "we do not evaluate the Appeals Council's decision to deny review,

but rather we determine whether the record as a whole, including the new evidence, supports the ALJ's determination." Cunningham v. Apfel, 222 F.3d 496, 500 (8th Cir. 2000). Here, Dr. Tucker's letter indicated that McDade had "significant problems," "did not seem to feign illness," and "was trying to do the best he could, and he was limited." Add. to Br. of App. 51. This is entirely consistent with the ALJ's determination in this case, which credited many of McDade's health issues and found that he was limited to sedentary work. And Dr. Tucker's conclusory statement that McDade "had become unable to work on March 14th, 2009," id., is not entitled to deference because it is a judgment reserved for the Commissioner. See Ellis, 392 F.3d at 994. Thus, we conclude the ALJ's determination was supported by the record as a whole, including the post-hearing evidence from Dr. Tucker.

C.

McDade also argues the ALJ erred by using the Medical-Vocational Guidelines (the "Grids"), instead of the testimony of a vocational expert, to determine whether there was substantial gainful employment McDade could perform. At McDade's hearing, the ALJ only asked the vocational expert to characterize McDade's past relevant work. The ALJ later applied the Grids to determine whether McDade was disabled. McDade argues that because he suffers from a nonexertional impairment, pain, the ALJ was required to elicit testimony from the vocational expert regarding the existence of jobs for a person with McDade's impairments. See Baker v. Barnhart, 457 F.3d 882, 894 (8th Cir. 2006) ("Generally, where the claimant suffers from a nonexertional impairment such as pain, the ALJ must obtain the opinion of a vocational expert instead of relying on the Medical-Vocational Guidelines.").

We disagree. Although McDade is generally correct, Baker goes on to state that "when a claimant's subjective complaints of pain are explicitly discredited for legally sufficient reasons articulated by the ALJ, the Secretary's burden at the fifth step may be met by use of the [Grids]." Id. at 894-95 (internal quotation and

alteration omitted).  Here, as discussed in detail above, the ALJ discredited McDade's allegations of completely disabling pain for legally sufficient reasons, including his not unduly restricted daily activities, the absence of long-term narcotic pain medication, and inconsistencies with other aspects of his medical record.  Therefore, we conclude the ALJ properly resorted to the Grids at Step 5.  See Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) (allowing reliance on the Grids where ALJ properly discredited claimant's complaints of pain and found claimant could perform full range of sedentary activity).

D.

Lastly, McDade argues the ALJ failed to properly apply the Adult Listing of Impairments.  See 20 C.F.R. pt. 404, subpt. P, app. 1.  Specifically, McDade argues his condition meets Listing 1.04 (Disorders of the Spine),[3] and thus he should have been found disabled at Step 3.  The ALJ found no evidence that McDade satisfied the criteria for Listing 1.04 or any other listing.  See Admin. R. 19.

The Government argues McDade waived this argument by failing to raise it in the district court.  Although we also have concerns about whether McDade properly preserved this argument, assuming, without deciding, that this issue was not waived, we do not find error in the ALJ's conclusion at Step 3.  The claimant bears the burden of demonstrating that his impairment matches all the specified criteria of a listing. See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of [disability] analysis, the claimant has the burden of showing that she is disabled.").

---

[3]In his brief, McDade also argues that his condition meets either Listing 1.00(B)(2) or 1.05(C).  However, Listing 1.00 is simply an introductory listing that explains the criteria for meeting various disorders of the musculoskeletal system and is not an independent impairment.  Listing 1.05(C) relates to amputation, which does not appear relevant to McDade.  Thus, we do not consider whether McDade meets either of these listings.

Here, although McDade presents some evidence that he satisfies Listing 1.04, such as evidence of spinal stenosis, he provides no evidence that his spinal injury resulted in compromise of the nerve root or the spinal cord, which is a requirement for all conditions within Listing 1.04. <u>See</u> 20 C.F.R. pt. 404, subpt. P, app. 1., § 1.04. Therefore, we agree with the ALJ's conclusion that McDade did not satisfy Listing 1.04.

III.

Accordingly, we affirm.

_____